Michael G. Spector, Counsel for Appellant Marie Hamilton, Trustee of the Ken Hamilton Family Trust. Matthew D. Resnick, Counsel for Appellee Rita Ramos-Curiel. Thank you. Good morning. Mr. Spector, do you want to reserve some time for rebuttal? Please, Your Honor. Five minutes. Five minutes. Very good. Go ahead, please. May it please the Court, my name is Michael Spector. I'm the attorney for the Ken Hamilton Family Trust, who is the appellant, or which is the appellant in this appeal. It's actually combined appeals. The first appeal has to do with the confirmation of the debtor's Second Amendment plan of reorganization. As the Court recalls, my client has the first trustee position on both of the properties owned by the debtor in this case. The properties are fully encumbered. There's no equity in the properties. My client's loan became due more than a year prior to the commencement of the case. Just prior to the filing of the bankruptcy, the properties were transferred to this debtor, then she filed bankruptcy, got the automatic stay, and presented a plan that says, although my client's loan was fully matured, she was going to stretch it out for a five-year period and have it all due and payable after the fifth year. Are you saying that it's legally impermissible to modify a matured, secured claim? I think there's two issues. One, modification, it may be modified, but does that mean that it's cured? Those are two different issues. The Bankruptcy Code requires a plan to adequately provide a means for implementation of a plan, including the curing or waiving of any defaults. And so, the loan may be modified to some extent, but does that cure the default? It doesn't cure the default. The point I'm making, I think, is that are you saying that you must cure, you can't simply modify? As I read this plan, it's not really a cure. It's taking a debt and giving it a brand new amortization period. Are you saying that's legally impermissible in any circumstances? If there is a default, the default must be cured. The only way to cure a fully matured debt is to pay it off upon confirmation, and that was made clear by the Ence White case. And so, modification is one thing, curing is nothing, another thing. What we have here in this case is a default, and that makes the difference about whether a cure is required or not. The Bankruptcy Code... Mr. Spencer, I'm going to, because I don't think you answered Judge Ferris' question. I think it's pretty important. If we assume that this is a modification and not a cure, are you still challenging the debtor's ability to pay this debt that was matured over five years based upon the terms as confirmed? A modification, there could be many different modifications. Suppose the modification was, we're going to get rid of the requirement for insurance. We're asking about this modification. Yeah, this modification is one that does not get rid of the default. The default... It did try to. So, you're... I'm sorry. Go ahead. I'm sorry. No, just, let's say, my understanding is that the debtor increased the amount of debt by the interest upon confirmation. It did not seek to reinstate the contract interest. Therefore, by that, that's just another indicator that this is not a cure, right? This was a new obligation created for a mature debt, but I'm left wondering why that was impermissible under the Bankruptcy Code. Because a modification just can't make all defaults evaporate by... Why does it have to? Why does it have to? I guess that's my question. You're saying that you cannot do a modification without curing all defaults, and I'm wondering why you think that's legally correct. What I'm saying is they're two totally independent things. I agree with you on that. I mean, they're totally two independent. There can be some modification, but if there's a default, the default must be cured. Maybe, in this case, it can't be modified because there is a default, and the default is non-payment on the maturity date. And that's one of the requirements for 1123A5G, is that for adequate means of implementation, the debtor must cure the default. And that was actually stated in the Ninth Circuit case of New Investments on page 1137, which the court said the plan must provide adequate means for implementation, including the curing or waiving of any defaults. That's a mandatory provision. It's not optional. You can't just bypass it because you don't, you know, you want to do something else. You know, but there's actually a statutory definition of including, which I think is in 102, if I remember correctly. And it says that including is not limiting. So, in that section you just read, I think including is one example of adequate means of performance under the plan. Not the only way you can provide adequate means of adequate assurance of performance. Well, if the fact applies, if there is a fault, that's one of the things in my view, the Ninth Circuit view that is required. If there is a default, it must be cured. And the bankruptcy court and the plan just bypassed all that and just said, well, we're just going to throw out the default. We're going to ignore it. We're ignoring your right to foreclose or have full payment on the loan. And we're just going to do something entirely new. Counsel, let me just ask you to move to the other arguments that I think are critical to this case. And that is why this plan factually isn't supported by the evidence rather than this legal argument about cure and modification. Fair enough. I think that probably can all be resolved in chambers. But the most important thing on this particular case on the evidence issue is the lack of feasibility. In this particular case, the debtor was projecting that the Lucky 7 business tire center was going to generate rents and wages to her and Mr. Guerrero, 14 of the $18,000 per month. But there was no evidence, zero evidence, that Lucky 7 would be able to throw off that kind of money. The only evidence that was there was evidence wasn't that. I don't know if that's quite true because debtor provided her declaration, which, as I understand, was on, you know, there was no cross-examination that she was increasing her wages and that her partner would contribute $3,000 and that they had to fund the ability to do it. So there is evidence. That is the evidence. Well, I guess I'll modify that. We objected to that evidence because there was no foundation for it. It was merely her statement. I mean, what foundation did you want? It hadn't happened quite yet. It was going to happen. She's the owner of the business. She's telling you that she's increasing her wages. How would she prove, I mean, otherwise prove that? Well, very simply, you provide a financial statement from the business, which, again, if it's not before the court, it's hearsay, for her just to make that opinion without any basis for it whatsoever. I mean, there's just no foundation. All the debtor had to do was come into court and say, I think I can do it. I'm not going to give you my paycheck. I'm not going to give you my financial statement. I just think I can do it. I mean, that evidence carries zero weight. Apparently, it carried enough weight for the bankruptcy court. Yeah, and I think we kind of need to get to the fundamental point because there was evidence, subject to some dispute, that Lucky Seven had the remaining amounts from the SBA loan, which, accordingly, were being decreased. But that was evidence that those amounts would be subject to some time of being able to be paid. Right, and you're right. Those monies were available. What I showed was that between the three months prior to the confirmation, those monies were being used up at the rate of $16,000 a month, leaving the bank account with $266,000. And just at that same rate, not to include the increases, at that same rate, the debtor would be out of money, or Lucky Seven would be out of money within 16 months. The problem is, how is the debtor, how is any Sub-5 debtor supposed to prove the future within that 16 months going on? Right, she's proving that she has the funds to pay it for 16 months, and, you know, like everyone else, is hoping that in the interim, the conditions improve such that it won't be needed. Well, the debtor provided no historical financial information, except for we provided the 2021 profit and loss, which showed a loss of $20,000 for the year, not including any compensation to Mr. Guerrero. And the diminishing of the bank account usually means that they're not making, you know, it doesn't usually mean they're making money, it usually means they're losing money and having to dig out a savings to keep going, so... But that's an inference, right? I mean, because there's no telling what exactly it means, it kind of proves and disproves your point. I mean, any inference can be drawn from that. Well, if they were making money, the accounts wouldn't be going down. I mean, given that amount of evidence that we showed that the amount of money was declining so rapidly, it cannot be said that the court could find that in more than a year, the debtor will be making enough money. There weren't even any projections from Lucky 7. No projections from Lucky 7 about what it was going to do. It just, whatever the debtor said, I think I can do it. That's enough. If that's the standard, we might as well just get rid of feasibility requirements because every debtor is going to come in and say, I think I can do it. Things are going to improve. I mean, there has to be some basis for that. And in this case, there simply was none. So counsel could do it... The other thing there was no basis for, the debtor... Judge Gann has a question for you. I just wanted you to address the balloon payment at the end of the term and how that evidence supported or didn't support that concept of the balloon payment. The debtor said, I think I'll be able to refinance that or sell at the end. Based on, again, based upon what? Nothing. Just her beliefs. I mean, how is that... And how much was the balloon payment relative to the amount of the original encumbrance that was still in existence at the time the balloon payment would be due? We had prepared a chart and I believe the balloon payment was going to be about $700,000. That was one of our exhibits that we submitted. It's on ER 102. It showed that at the end of the fifth year, there would be $717,000 still owing. Not much of a reduction and certainly not enough to create enough equity if the real estate markets don't improve. Again, we don't, I mean, we don't have no idea what the market's going to be like, but nor does the debtor. And the debtor merely saying, I think I can do it based upon, you know, her wishes. It's just not, it's not credible evidence. I'll reserve the remaining two minutes if the court doesn't mind. Thank you. That's fine. Thank you. Mr. Resnick, please go ahead. Good morning, your honors, or good afternoon at this time, at least out here on the West Coast. It's morning for me. You were right the first time as far as I'm concerned. On the West Coast there in Hawaii. Matthew, hold on one second. We need to get the time clock set here. Going the wrong way. Or back to the right way. All right. Shall we just go by my watch, Madam Clerk? Yeah, we need to be at 15 minutes. Oh, my apologies. I've got it, I've got it now. Sorry. Okay. Seems like time is standing still. Right. Okay, there we are. Good, good. There we go, there we go. Okay, go ahead, Mr. Resnick. Good morning, your honors and the panel. It's an honor to be in front of you, Matthew Resnick, on behalf of the appellee, Curiel. I think what we just listened to based on the appellant's argument was some more conjecture and speculation as to the dread and downfall of the debtor. You know, we could talk about the ends white. I think that's been misread. I think Judge Albert agreed with us that there is the right to, beside the specter view of a maturity of a loan or an acceleration of a loan, is debt on arrival. I think that the bankruptcy code, most of the bankruptcy court jurisdictions, most of the precedent that we've seen followed, looks at 1123A5, looks at it not necessarily as cure and modifications as the same, but they're distinct concepts that certainly do not overlap. So when Congress provided for 1123A5, they provided adequate means for plan implementation, not exclusive of modification, not exclusive of cure, but certainly one could modify a plan and certainly under 1123A5H, the extension of the maturity date or change in the interest rate. Let me ask you this. Let me get you to what I think is the crux of your, weakest part of your case, and that is what evidence, your client had the burden of proof on plan confirmation. What evidence, admissible evidence, did your client offer that she would be able to make this balloon payment in year five? Well, Your Honor, I think there's a real easy real estate quotient, which is there's a 50% loan to value. The properties were valued at a million five, maybe a million five and change. The first deed of trust is a valued around 700,000. There was no discovery had by the appellant. There was no request for documents from the appellant that would have provided that information or required to have that information. We basically inched that along with the judge and should the judge have required additional information or have the judge not believed that we would be able to provide a refinance. And I'm sure the judge- What does the 50% loan to value have to do? I mean, I understand that as to the Hamilton Family Trust, but wasn't the obligation to examine whether the debtor would have the ability to make all the required balloon payments, including the two judgments? Well, I think that it requires a plan payment, and then at the end of the term, it would require a balloon payment. And I don't think that's very unusual in Chapter 11 cases. Quite often, there are balloon payments. The law seems to suggest that a little harder look is required for balloon payments. Careful scrutiny is required with respect to balloon payments, but I do believe that based on the fact that the debtor would be paying down the loan over the period of five- Not that much. Let me solve one question we had. It seems that the Hamilton Family Trust filed an amended claim that was recognized in the confirmation brief and in the debtor's declaration, but it was not incorporated into either the payment or the final balloon payment. Was that just an oversight, or how is that being handled? I think that claim came in at the end. I believe we amended for it with the Subchapter 5 trustee. Once again, the judge and both the judge and the Subchapter 5 trustee and the second, no one argued that the plan would not be feasible in that fifth year. The second really never even appeared, did they? No, they didn't appear. Clearly, they didn't think that the loan would be in jeopardy, that they thought- That's one inference. There's certainly one inference. But the problem is that it added 40,000 or so to it, which is either going to increase the monthly payment, which gets you into a concern given that you're really only stating $136 in net positive income for five years, and it has an effect on the amount that's due on the balloon that wasn't included or addressed by either you or the court. Given the thinness of the margins here, isn't that required? Your Honor, clearly, the judge, Judge Albert, the trial court judge, in reviewing the entire file and reviewing the entire procedural and payment history of the debtor and being very familiar with the Southern California market, I believe that he felt that there was a reasonable probability- Did he take judicial notice of the California market? No, he did not take judicial notice, nor was that provided. How did she do on cross-examination? There was no cross-examination. There was no discovery in this matter, Your Honor. There was no evidence presented other than declarations and documentary evidence that you attached to those declarations. That's true, Your Honor. Was there any profit and loss statement information provided for Lucky Seven? Yes, there was. There was a profit and loss statement. I believe it's in the record. But no, that was provided for the Hamilton Family Trust. But did you, the debtor, provide evidence of the profit and losses during the course of the bankruptcy case? Yeah, we provided it to the Hamilton Trust. We provided that information. That profit and loss demonstrated that during COVID, during the pandemic era, there was a loss of about $1,700 a month. I think, let me just look here, ER-169. So it demonstrates that even during a difficult period of time- What happened in 2022? Well, that information wasn't, first of all, it wasn't concluded in 2022, right? Because the plan was confirmed- That doesn't stop the debtor's monthly obligations. The debtor is saying, despite the thinness on both the monthly payment and the balloon, I've got this SBA loan that is going to cover everything for Lucky Seven. I believe that, again, in 2021, they did not have the EIDL loan, Your Honor. I understand, but you're missing the point, I think, because Lucky Seven, based upon the 2021 profit and loss, was in dire enough straits that it needed the SBA loan, which was received the month before the individual bankruptcy. And then it is used as a cure-all, essentially, for going forward, except that it starts diminishing at a fairly significant rate, a third of it is used by time of final confirmation. And that is, I believe, what Judge Gant's getting at. Understand 2021, understand pandemic, but there's 11 months that proceed in 2022, for which there's nothing in the record, is there? Well, there was nothing demanded in the record, for one. The burden was on the debtor. The debtor allegedly overcame that burden with the trial court, Judge. Had that information been demanded or requested, certainly that would have been provided. But we provided exactly that, which the court required, in order for us to inch towards that 50-yard line and get one inch over. And that's an interesting point. And that's what I'm saying. I mean, Judge Albert was clear that it was a 50 and a nudge. And if the monthly obligations, based upon the amended claim, increased that amount.  Yeah, there's no nudge. Well, there is a nudge, Your Honor. That was mostly based on attorney fees. There is a little bit of an emergency expense there. And let's just not forget the EID- Emergency expense was $100 a month. I mean, no, no, I don't. And that's with the upkeep of $100 a month for both properties, increasing to 300, right? The problem is that this thing is very tight. The $100 a month emergency, I believe, was used to pay for the increase in their rental properties from 1200 to 1300. Well, I think the court felt, just like in Esequia, that there was a reasonable probability of success. And I don't mean to just recite case law, but brought me as well, is that you don't have to prove that success is inevitable. And in this case, we proved- But is there a difference between possibility and probability? As far as the bankruptcy code's concerned, I think even possibility is enough to inch it towards the successful reorganization. Congress prefers reorganization over liquidation. And I think that the court here, the trial court here, was able to review the information. I'm sure the three panelists have already reviewed all the dockets that were filed at the court. The judge certainly had some concerns and certainly had some suspicions with respect to whether or not the debtor would be able to make this work. But after reviewing all the cash that was in the monthly operating reports and reviewing that all the payments, in cash collateral payments, were made, and the fact that she- Cash collateral is half of the obligation. And the monthly operating reports never got to the $18,000 that she says she's going to have. Well, that's because this is a sole corporation. It's run by her. She demonstrated that she should make more than just a barely living wage. Many individuals, many individual corporate owners will reinvest their own salaries into the company in order to make the company work. They were coming out of COVID. They decided after the- It was not always $1,800 a month that the debtor was making. For many years, it was much higher than that. It's just during- Well, that wasn't required. We weren't required to show that, especially- You can't make that statement on the field, can you? Well, I'm not looking at that case as fact. But the trial court judge was able to review all these facts and the debtor demonstrated- Including the larger income previously? Well, including that. The tax returns would have been made available. So what we're looking at is the record now. And the record that shows now is that in 2021, there was a limited loss every month. In 2022, she got an EIDL loan. That was used only as a safety net. Only as a safety net. And that might be used for the corporation. What's that in the record? Where's the safety net only used? Well, this is a third-party contribution, right? The legal and moral obligation was reviewed by the trial court judge, Judge Albert. And he believes that that safety net, as well as the sub-five trustee, would benefit not only the debtor, but the estate creditors. And as a result, who knows if that $266,000 is now $300,000 or $400,000. We're not looking at it in a microscope as to the money that was drawn down in the business judgment of the corporation. It was used only as a buffer in case she couldn't make that $18,000 a month. The company would have that additional income to provide to the Chapter 11 plan payments. I do believe that Judge Albert did look at the evidence. And absent something extremely prejudicial, I don't see how there is clear error with respect to what the judge did and how the judge decided here. It certainly wasn't illogical. It certainly wasn't implausible. And in fact, I think that pushing the debtor over the edge has actually made the Chapter 11 plan work. It continues to work. And without any additional lawsuits or hardships that are hanging over the debtor's head, I think the successful reorganization is more likely than probable. And I do... Let me ask you this. Under this plan, what happens if the debtor can't make that balloon payment or doesn't make it? Well, the plan, as I'm sure the court is aware, has some robust default provisions. And if there is a missing payment, first of all, it's a non-consensual plan. So the Sub-V Trustee is the one who's receiving the payments and making the payments. So there's already a supervisory role that isn't in the traditional Chapter 11 plans. And Rob Go, the Sub-V Trustee, has the obligation to maintain the payments to the Hamilton Trust. Well, the payments must come from somewhere. Obviously, they come from the debtor and the debtor's been making those payments on a regular and ongoing basis. In addition, there's a robust default provision, which is in the plan, which I believe that the court felt was adequate, in that if there are payments that are missing, then the remedy is for the Hamilton Trust to go after those same rights that they had prior to the bankruptcy, which is to proceed with foreclosure. Not immediately, but they would be able to proceed with foreclosure and collect on their investment. Now, again, there's a 50% loan to value. I don't know what the fair market value is today. I'm not taking traditional notice, as Judge Spraker had intimated. Let me stop you and tell me what concerns me about that. Let's suppose the debtor gets to the end and she can't or doesn't make the payment. She's better off. She's had the use of the property and made the income and so forth for the five years. The creditor is certainly no better off, potentially worse off, depending on what happens to the real estate. Why is it appropriate to have that kind of a risk shifting in a plan like this, where the debtor pretty much wins no matter what and the creditor has no upside at all? Well, I think in the simplistic terms, you're looking at timbers, and timbers looked at the case in which the equity of the senior lien holder, plus the probability, the possibility of reorganization, if you will. And I believe that timbers would allow for something like this, where there is a 50% loan to value rate. There's no indication that the market's turned sideways. Certainly the market's interest rates have increased, but lo and behold, the markets remain steady and pretty consistent. And again, I'm not saying that Judge Albert took judicial notice of that fact, but it was certainly alleged, the fact that the interest rates were increased by the Hamilton Trust. And I think that the judge felt that they were adequately protected for any risk or any adverse of the risk by the higher interest rate, where we went from 5% to 8.5%, and the short term, meaning five-year loan term payment and was confirmed. I do believe in closing that the court did find that the debtor did all that she could possibly do to get this case confirmed. I do believe that she proposed a plan that was within the bounds of confirmation. And at the end of the day, the debtor will be able to make these payments as they come due. Thank you, Your Honor. Okay, thank you. Any more questions for the panel at this point? For Mr. Resnick? No, thank you. Okay, Mr. Spector, back to you. Let's see, I think there was... Two something. Yeah. I have a few quick points. Okay, go ahead. We'll make it three, go ahead. Thank you. I just realized what counsel was talking about when he said 50% loan to value. It means if you only consider my client's loan and not the subordinate loan that would also have to be paid, then it'd be 50% loan to value. But unfortunately, that's not the way financing works. They're gonna have to pay the whole thing. At this point, if you look at the liquidation analysis, which is ER 24, there's no equity in those properties. And these properties were valued, I believe in April of 2022 before all the interest rate hikes that took effect, the big one. I can't imagine that this property is increasing in value. But again, we don't have that kind of evidence. That's the problem with this is you can't imagine, and Mr. Resnick relies upon the debtor's belief that they'll retain the value at least, if not appreciate. Is that evidence? And I guess this gets me to the bigger point. You asked for reversal, but aren't we just, if we agree with you, doesn't this just go back to Judge Albert and the debtor comes back and maybe with cross-examination presents her case with the details of Lucky 7? Well, that's a good point. That ties into the third point I was going to make was if the court reverses, I would request that the court also reverse the order denying the motion for release and stay. How? I understand the relation. I'm glad you brought that up. But how? I mean, given everything that's in the record here, these properties are critical to the effect of reorganization. If there's no equity in the property, which is admitted, and the debtor is not able to- Well, again, as to you, there is equity, right? That seems to be clear. So that equity component is off the books. It's really the, is there no equity and is it not necessary for an effective reorganization? Correct. I'm not talking about adequate protection. I'm saying, strictly speaking, there is no equity in this property for this debtor and the debtor is not able to present a confirmable plan. The court should reverse the order. You're jumping the gun on that one because really it sounds like you have a belief of the facts or inferences of facts and facts that aren't in the record. One way, Mr. Resnick is saying that, yeah, we just did what we had to because there was no objection. If we have to, we'll prove it up. I mean, they at least get to prove it up, don't they? And that tied into my second point, which is that's not true. When we filed the objection to confirmation, which was filed on the 14th of November, 2022, we laid out our evidence to show that Lucky 7 was losing money and losing money fast. They have the opportunity in their plan confirmation brief that was filed a week later to say, no, look, here's our evidence to show Lucky 7 is making money and it's going to be able to fulfill it. So to say that we didn't even make this suggestion or request it or make this argument or raise this issue is just totally false. This was our primary issue and our objection to confirmation. They had a chance to reply and they didn't. They didn't do anything other than have the debtor say, I think I can do it. Okay, thank you. You've exhausted your time. I thank you both for your interesting arguments and an interesting case. The matter is submitted and we'll get you a decision promptly. Thank you very much. Thank you, Ron.
judges: Faris, Spraker, and Gan